# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE.**        **2. PLEASE TYPE OR PRINT.**        **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| IN RE GILDAN ACTIVEWEAR, INC. SECURITIES LITIGATION | S.D.N.Y. | Hon. Harold Baer, Jr. |

| | Date the Order or Judgment Appealed from was Entered on the Docket: | District Court Docket No.: |
|---|---|---|
| | 7/1/09; 12/4/09 | 08 Civ. 5048 (HB) |

| | Date the Notice of Appeal was Filed: | Is this a Cross Appeal? |
|---|---|---|
| | | ☐ Yes    ☑ No |

| Attorney(s) for Appellant(s): ☑Plaintiff ☐Defendant | Counsel's Name:    Address:    Telephone No.:    Fax No.:    E-mail: |
|---|---|
| | Jonathan Gardner, Brian D. Penny, Labaton Sucharow LLP, 140 Broadway, New York, NY 10005, Tel: (212) 907-0700, Fax: (212) 818-0477, E-mail: jgardner@labaton.com, bpenny@labaton.com |
| | Samuel A. Rudman, David A. Rosenfeld, Carolina Torres, Erin W. Boardman, Coughlin Stoia Geller Rudman & Robbins LLP, 58 South Service Road, Suite 200, Melville, NY 11747, Tel: (631) 367-7100, Fax: (631) 367-1173, E-mail: SRudman@csgrr.com, DRosenfeld@csgrr.com, CTorres@csgrr.com, EBoardman@csgrr.com |

| Attorney(s) for Appellee(s): ☐Plaintiff ☑Defendant | Counsel's Name:    Address:    Telephone No.:    Fax No.:    E-mail: |
|---|---|
| | Steven L. Holley, Brian T. Frawley, Laurent S. Wiesel Sullivan & Cromwell LLP 125 Broad Street, New York, NY 10004 Tel: (212) 558-4000 Fax: (212) 558-3588 E-mail: holleys@sullcrom.com, frawleyb@sullcrom.com, wiesell@sullcrom.com |

| Has Transcript Been Prepared? no | Approx. Number of Transcript Pages: | Number of Exhibits Appended to Transcript: | Has this matter been before this Circuit previously?  ☐ Yes  ☑ No  If Yes, provide the following: Case Name: 2d Cir. Docket No.:            Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

*ADDENDUM "A":* COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

*ADDENDUM "B":* COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

### PART A: JURISDICTION

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| ☐ U.S. a party        ☐ Diversity | ☑ Final Decision        ☐ Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b)) |
| ☑ Federal question (U.S. not a party)    ☐ Other (specify): _____ | ☐ Interlocutory Decision Appealable As of Right        ☐ Other (specify): _____ |

## IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.

**FORM C** (Rev. April 2006)

| PART B: DISTRICT COURT DISPOSITION (Check as many as apply) | | |
|---|---|---|
| **1. Stage of Proceedings**<br><br>☑ Pre-trial<br>☐ During trial<br>☐ After trial | **2. Type of Judgment/Order Appealed**<br><br>☐ Default judgment<br>☐ Dismissal/jurisdiction<br>☑ Dismissal/merit<br>☐ Summary judgment<br>☐ Declaratory judgment<br><br>☐ Judgment / Decision of the Court<br>☐ Jury verdict<br>☐ Judgment NOV<br>☐ Directed verdict<br>☑ Other (specify): Reconsideration | **3. Relief**<br><br>☑ Damages:<br>☐ Sought: $ unspecified<br>☐ Granted: $ _____<br>☐ Denied: $ _____<br><br>☐ Injunctions:<br>☐ Preliminary<br>☐ Permanent<br>☐ Denied |

| PART C: NATURE OF SUIT (Check as many as apply) | | | |
|---|---|---|---|
| **1. Federal Statutes**<br><br>☐ Antitrust<br>☐ Bankruptcy<br>☐ Banks/Banking<br>☐ Civil Rights<br>☐ Commerce,<br>☐ Energy<br>☐ Commodities<br>☐ Other (specify): _____<br><br>☐ Communications<br>☐ Consumer Protection<br>☐ Copyright ☐ Patent<br>☐ Trademark<br>☐ Election<br>☐ Soc. Security<br>☐ Environmental<br><br>☐ Freedom of Information Act<br>☐ Immigration<br>☐ Labor<br>☐ OSHA<br>☑ Securities<br>☐ Tax | **2. Torts**<br><br>☐ Admiralty/<br> Maritime<br>☐ Assault /<br> Defamation<br>☐ FELA<br>☐ Products Liability<br>☐ Other (Specify): | **3. Contracts**<br><br>☐ Admiralty/<br> Maritime<br>☐ Arbitration<br>☐ Commercial<br>☐ Employment<br>☐ Insurance<br>☐ Negotiable<br> Instruments<br>☐ Other Specify | **4. Prisoner Petitions**<br><br>☐ Civil Rights<br>☐ Habeas Corpus<br>☐ Mandamus<br>☐ Parole<br>☐ Vacate Sentence<br>☐ Other |
| **5. Other**<br><br>☐ Forfeiture/Penalty<br>☐ Real Property<br>☐ Treaty (specify): _____<br>☐ Other (specify): _____ | **6. General**<br><br>☐ Arbitration<br>☐ Attorney Disqualification<br>☐ Class Action<br>☐ Counsel Fees<br>☐ Shareholder Derivative<br>☐ Transfer | **7. Will appeal raise constitutional issue(s)?**<br>☐ Yes  ☑ No<br><br>Will appeal raise a matter of first impression?<br><br>☐ Yes  ☑ No | |

1. Is any matter relative to this appeal still pending below? ☐ Yes, specify: _____     ☑ No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

    (A)   Arises from substantially the same case or controversy as this appeal?    ☐ Yes    ☑ No

    (B)   Involves an issue that is substantially similar or related to an issue in this appeal?    ☐ Yes    ☑ No

If yes, state whether ☐ "A," or ☐ "B," or ☐ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| Name of Appellant: | | | |

| Date: Dec. 30. 2009 | Signature of Counsel of Record: Jonathan Gardie /FM |
|---|---|

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only ten (10) calendar days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file two copies with the Clerk of the Second Circuit.
2. File **two** copies of the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit.
3. Pay the $455 docketing fee to the Clerk of the United States District Court, unless you are authorized to prosecute the appeal without payment.

        **PLEASE NOTE:  IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN TEN (10) CALENDAR DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* THE CIVIL APPEALS MANAGEMENT PLAN OF THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT.

**FORM C** (Rev. April 2006)

## In re GILDAN ACTIVEWEAR INC. SECURITIES LITIGATION

## Addendum "A" to Civil Appeal Pre-Argument Statement (Form C)

### Nature of the Action

The underlying action to this appeal involves claims of securities fraud against Gildan Activewear. Inc. ("Gildan" or the "Company"), its Chief Executive Officer Glenn Chamandy and its Chief Financial Officer Laurence Sellyn (collectively "Defendant-Appellees") alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of purchasers of the common stock of Gildan between August 2, 2007 and April 29, 2008, inclusive (the "Class Period").

Gildan manufactures active wear for the wholesale imported sportswear market in the United States and Canada. This case is about Defendant-Appellees' materially false and misleading statements concerning production problems at the Company's Dominican Republic facility. Throughout the Class Period, unbeknownst to investors, Gildan was experiencing significant and severe production problems at its Dominican Republic production facility which were hampering the Company's ability to timely produce inventory and driving up expenses. Before the Company revealed the true state of the manufacturing problems and their impact on the Company's financial condition, Defendant-Appellees Chamandy and Sellyn sold shares of their personally-held Gildan stock, generating proceeds of $96 million. When the market was advised of the production problems at Gildan's Dominican Republic production facility and other adverse facts, as detailed herein, the price of Gildan stock declined from $35.92 per share to $24.93, or 30%, on extremely heavy trading volume.

1

Since going public, Gildan had historically reported year-over-year average earnings growth of 30%. The Company's earnings growth had largely come from its ability to consistently undercut price competition and accumulate market share. According to the Complaint, however, in 2006 Gildan began to face significant competition as companies replicated Gildan's low-cost generic business model, thereby driving prices in the active wear market down. This put pressure on Gildan's profit margins as the Company was forced to compete more aggressively on price. Cheap Chinese-manufactured products further pressured the Company's profit margins.

In March 2007, in an apparent cost-cutting move, Gildan transferred manufacturing capacity from higher cost centers in Mexico, Canada, and the United States to presumably lower cost production facilities in the Dominican Republic.

By the start of the Class Period, however, Defendant-Appellees knew that the production transition to the Dominican Republic facility was a complete disaster. Gildan first opened its Dominican Republic production facility in 2005. By the start of 2007, the facility struggled with persistent production issues, including: (a) massive layoffs and management turnover; (b) ineffective management and overly aggressive cost cutting initiatives which slogged production; (c) chronic machine failures and malfunctions that interrupted production output; and (d) unreasonable and unrealistic production goals and expectations set by Gildan management in Canada. Then, in March 2007, Gildan abruptly transferred additional production of more complex and sophisticated product weaves to the Dominican Republic facility, thereby compounding the existing problems.

The Class Period commences on August 2, 2007. On that date, Gildan publicly issued earnings guidance for fiscal 2008 of $1.80-$1.85 per share, thus forecasting 40%

2

earnings growth over fiscal 2007. Defendant-Appellees represented that Gildan's anticipated earnings growth was dependant on large scale manufacturing cost savings that would be attained by transferring production to its lower cost centers offshore, in particular, the Dominican Republic facility. Given the then-existing problems at the Dominican Republic facility, Defendant-Appellees knew that they would not be able to generate the represented manufacturing efficiencies.

As the problems in the Dominican Republic facility intensified throughout the Class Period, Defendant-Appellees publicly downplayed any production issues and assured the market that production problems at the Dominican Republic facilities were "100%" resolved. That was not true, as Defendant-Appellees knew due to their active involvement in addressing the severe and persistent production problems at the Dominican Republic facilities. Defendant-Appellees also repeatedly reconfirmed their revenue and earnings guidance and periodically *increased* it, thereby falsely representing that business for Gildan was improving and its production transition was paying off. The truth was that the Dominican facility was spiraling out of control and Defendant-Appellees were being forced to expend significant time and resources in an effort to correct the problems.

At the same time that Defendant-Appellees were increasing earnings guidance and telling investors that any production problems were "resolved," the Individual Defendants sold more than 2.5 million shares of their personally-held Gildan stock for proceeds of more than *$96 million*.

Then, on April 29, 2008, Gildan admitted that significant production issues in the Dominican Republic meant that it could not achieve its stated earnings guidance.

3

Defendant-Appellee Sellyn further admitted that the Dominican Republic facility had never operated as efficiently as other Gildan facilities, despite Defendant-Appellees' repeated assurances throughout the Class Period to the contrary. Defendant-Appellees also admitted that Gildan had millions of dollars of impaired inventory and it would be taking a material write-down for specialized sock inventories that could not be sold, and an additional material charge for systems integration costs resulting from a change to Gildan's computer ordering system at a recently acquired subsidiary. As a result of these problems, Gildan reduced its fiscal 2008 earnings guidance by roughly 25%, down to $1.40-$1.45 per share.

In response to these announcements, the price of Gildan stock dropped from $35.92 per share to $24.93 per share, or 30%, on extremely heaving trading volume. Analysts expressed surprise that Gildan had not told them about the extent of the production problems at the Dominican Republic facility or the impact of those problems on the Company's ability to attain its stated revenue and earnings guidance, which it had reaffirmed only weeks before.

On December 19, 2008, each of the Defendant-Appellees filed a motion to dismiss the operative complaint.

## The Results Below

By an Order and Opinion dated July 1, 2009, the district court granted Defendants-Appellees' motions to dismiss. A copy of the district court's July 1, 2009 is annexed hereto as Exhibit A.

4

Despite the fact that Plaintiff-Appellants alleged that Defendant-Appellees Chamandy and Sellyn, respectively, sold 25% and 53% of their Gildan holdings between June and December 2007, and that in total they sold $96 million worth of Gildan stock during that period, the district court determined that the Complaint's motive and opportunity allegations of scienter were inadequate because (1) "the value and volume of shares that the Individual Defendants sold as compared to their total holdings was not unusual"; (2) Plaintiff-Appellants "fail[ed] to allege any facts relating to the amount of profit the Individual Defendants garnered from their sales"; and (3) "the Individual Defendants' sales were also relatively small in volume compared to overall holdings." Order at 8. The district court then criticized the Complaint for alleging only insider sales by two Gildan executives (the Insider Defendants) and not for other insiders at Gildan. *Id.* at 9. Finally, although the CEO Defendant had entered into a 10b5-1 trading plan only weeks before the Class Period, the district court found the fact that 99% of the trades alleged in the Complaint were made pursuant to the trading plan militated against any inference of scienter. *Id.*

On the issue of recklessness, the district court also found the Complaint's allegations inadequate. *Id.* at 11. Principally, the court found that although the Complaint alleged that "significant problems at [Gildan's] Dominican Republic facility made it 'impossible' or 'patently unrealistic' for it to achieve its projected earnings, and that the Company's internal modeling should have made them aware of that fact", Plaintiff-Appellants "do not allege any facts to suggest what those models revealed at the time, or what effect the models might have had on Gildan's financial results." *Id.* Thus, notwithstanding that this conclusion overlooked allegations in the Complaint addressing

5

this very concern, the district court required Plaintiff-Appellants to plead the details of internal modeling and financial projections without the benefit of any formal discovery and refused to draw inferences based on the facts alleged.

We submit the district court also ignored dozens of allegations of specific problems at the Dominican Republic facility, supported by statements made by confidential witnesses, and Defendant-Appellees' knowledge of those issues, and improperly concluded that "[t]he Complaint's general allegations that, by virtue of their senior positions at Gildan, the Individual Defendants necessarily had access to nonpublic information, are insufficient to show recklessness under the law of this Circuit." *Id.*

The district court further found that the Complaint's allegations regarding problems associated with Gildan's integration of Kentucky Derby Hosiery did not support a finding of scienter largely because it was unclear to the court when Defendant-Appellees became aware of those problems. *Id.* at 11-12.

Although it analyzed only a few of the alleged misrepresentations, the district court, in dicta, found the Complaint also failed to adequately allege a material misrepresentation. The district court concluded that statements that Gildan would "continue to maximize production" or that is was "leveraging the expertise" of its Honduran management team "were simply vague expressions of optimism about the ability of the Dominican facility to ramp-up production" and were mere puffery. *Id.* at 12-13. In a footnote, the district court also dismissed Plaintiff-Appellants' Section 20(a) control person claims for failure to state an underlying 10(b) violation.

6

Although Plaintiff-Appellants had requested the opportunity to re-plead if the Complaint was dismissed, the district court did not appear to specifically address this request and did not specifically note whether its Order was with prejudice.

Accordingly, on July 17, 2009, Plaintiff-Appellants filed a timely Motion for Reconsideration of the Court's July 1, 2009 Opinion and Order. That motion sought (1) a clarification of whether the district court's Order was with prejudice to Plaintiff-Appellants' right to file an amended complaint, and if so, (2) a reconsideration of that aspect of the Order. By an Order and Opinion dated December 4, 2009, the district court denied that motion, clarifying its dismissal was intended to be with prejudice. A copy of the December 4, 2009 is annexed hereto as Exhibit B. This timely appeal followed.

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————— x
In re GILDAN ACTIVEWEAR INC.     :    Civil Action No. 1:08-cv-05048-HB
SECURITIES LITIGATION              :
——————————————    :
                                 :
This Document Relates To:      :    NOTICE OF APPEAL
                                 :
   ALL ACTIONS.             :
—————————————————— x

PLEASE TAKE NOTICE that Lead Plaintiffs City of Saint Clair Shores Police and Fire

Retirement System, Norfolk County Retirement System, and City of Pontiac Policemen's and

Firemen's Retirement System, and additional Plaintiff City of Detroit Policeman's and Fireman's

Retirement Systems (collectively "Plaintiffs"), in the above-captioned case, hereby appeal to the

United States District Court for the Second Circuit from the following two orders:

1.     The court's July 1, 2009 Order Granting Defendants' Motion to Dismiss; and

2.     The court's December 4, 2009 Order Denying Plaintiffs' Motion for
           Reconsideration.

DATED: December 30, 2009         LABATON SUCHAROW LLP
                               CHRISTOPHER J. KELLER
                               JONATHAN GARDNER
                               BRIAN D. PENNY

                          *Jonathan Gardner / FM*
                              ——————————————
                               Jonathan Gardner

                              140 Broadway, 34th Floor
                              New York, NY 10005
                              Telephone: 212/907-0700
                              212/818-0477 (fax)

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA JR.
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

*Co-Lead Counsel for Plaintiffs*

SULLIVAN, WARD, ASHER & PATTON, P.C.
CYNTHIA J. BILLINGS
25800 Northwestern Highway
1000 Maccabees Center
Southfield, MI 48075-1000
Telephone: 248/746-0700
248/746-2760 (fax)

VANOVERBEKE MICHAUD & TIMMONY, P.C.
MICHAEL J. VANOVERBEKE
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)

SCOTT + SCOTT
DAVID R. SCOTT
ERIN GREEN COMITE
108 Norwich Avenue
Colchester, CT 06415
Telephone: 860/537-3818
860/537-4432 (fax)

*Additional Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I, Jonathan Gardner, hereby certify that on December 30, 2009, I caused a true and

correct copy of the attached:

Notice of Appeal

to be served electronically on all counsel registered for electronic service for this case, and by

first class mail to:

Steven L. Holley
Brian T. Frawley
Laurent S. Wiesel
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004

*Attorneys for Defendants*

Jonathan Gardner / Fay

Jonathan Gardner

3

Order documents from our nationwide document retrieval service.
- OR - Call **1.866.540.8818.**

# US District Court Civil Docket

## U.S. District - New York Southern
### (Foley Square - NYC)

## 1:08cv5048

## In re Gildan Activewear Inc Securities Litigation

This case was retrieved from the court on Wednesday, December 30, 2009

| | |
|---|---|
| **Date Filed: 06/02/2008** | **Class Code: CLOSED, ECF, LEAD** |
| **Assigned To: Judge Harold Baer** | **Closed: Yes** |
| **Referred To:** | **Statute: 15:78m(a)** |
| **Nature of suit: Securities (850)** | **Jury Demand: Plaintiff** |
| **Cause: Securities Exchange Act** | **Demand Amount: $0** |
| **Lead Docket: None** | **NOS Description: Securities** |
| **Other Docket: 1:08-cv-0571** | |
| **1:08-cv-06144-HB** | |
| **Jurisdiction: Federal Question** | |

| Litigants | Attorneys |
|---|---|
| Institutional Investor Group Lead Plaintiff | Christopher J Keller<br>[COR LD NTC]<br>Labaton Sucharow, LLP<br>140 Broadway<br>New York , NY 10005<br>USA<br>(212) 907-0853<br>Fax: (212) 883-7053<br>Email: CKELLER@LABATON.COM<br><br>Brian D Penny<br>[COR LD NTC]<br>Labaton Sucharow LLP<br>140 Broadway<br>New York , NY 10005<br>USA<br>212-907-0700<br>Pro Hac Vice<br><br>Mark S Goldman<br>[COR LD NTC]<br>Labaton Sucharow, LLP<br>140 Broadway<br>New York , NY 10005<br>USA<br>(212) 907-0700<br>Fax: (212) 818-0477 |
| Norfolk County Retirement System Lead Plaintiff | Brian D Penny<br>[COR LD NTC]<br>Labaton Sucharow LLP<br>140 Broadway<br>New York , NY 10005<br>USA<br>212-907-0700<br>Pro Hac Vice<br><br>David AVI Rosenfeld<br>[COR LD NTC]<br>Coughlin Stoia Geller Rudman & Robbins, LLP (Li)<br>58 South Service Road<br>Suite 200<br>Melville , NY 11747 |

USA
631-367-7100
Fax: 631-367-1173
Email: DROSENFELD@CSGRR.COM

Erin Whitney Boardman
[COR LD NTC]
Coughlin Stoia Geller Rudman & Robbins, LLP (Li)
58 South Service Road
Suite 200
Melville , NY 11747
USA
(631)-454-7710
Fax: (631)-367-1173
Email: EBOARDMAN@CSGRR.COM

Jonathan Gardner
[COR LD NTC]
Labaton Sucharow, LLP
140 Broadway
New York , NY 10005
USA
212-907-0839
Fax: 212-818-0477
Email: JGARDNER@LABATON.COM

City of St Clair Shores Police And Fire Retirement System
Individually And on Behalf of All Others Similarly Situated
Plaintiff

David AVI Rosenfeld
[COR LD NTC]
Coughlin Stoia Geller Rudman & Robbins, LLP (Li)
58 South Service Road
Suite 200
Melville , NY 11747
USA
(631) 367-7100
Fax: (631) 367-1173
Email: DROSENFELD@CSGRR.COM

Mario Alba , Jr
[COR LD NTC]
Coughlin Stoia Geller Rudman & Robbins, LLP (Li)
58 South Service Road
Suite 200
Melville , NY 11747
USA
(631) 367-7100
Fax: (631) 367-1173
Email: MALBA@CSGRR.COM

Samuel Howard Rudman
[COR LD NTC]
Coughlin Stoia Geller Rudman & Robbins, LLP (Li)
58 South Service Road
Suite 200
Melville , NY 11747
USA
(631) 367-7100
Fax: (631) 367-1173
Email: SRUDMAN@CSGRR.COM

Erin Whitney Boardman
[COR LD NTC]
Coughlin Stoia Geller Rudman & Robbins, LLP (Li)
58 South Service Road
Suite 200
Melville , NY 11747
USA
(631)-454-7710
Fax: (631)-367-1173
Email: EBOARDMAN@CSGRR.COM

The Police And Fire Retirement System of The City of Detroit on
Behalf of Themselves And All Others Similarly Situated
Consolidated Plaintiff

David R Scott
[COR LD NTC]
Scott & Scott, LLC(CT)
108 Norwich Avenue
P.O.Box 192
Colchester , CT 06415
USA
(860)537-5537

Fax: (860)537-4432
Email: Drscott@scott-Scott.com

David AVI Rosenfeld
[COR LD NTC]
Coughlin Stoia Geller Rudman & Robbins, LLP (Li)
58 South Service Road
Suite 200
Melville , NY  11747
USA
631-367-7100
Fax: 631-367-1173
Email: DROSENFELD@CSGRR.COM

Erin Whitney Boardman
[COR LD NTC]
Coughlin Stoia Geller Rudman & Robbins, LLP (Li)
58 South Service Road
Suite 200
Melville , NY  11747
USA
(631)-454-7710
Fax: (631)-367-1173
Email: EBOARDMAN@CSGRR.COM

Alejandro Alegre Individually And on Behalf of All Others Similarly Situated
Consolidated Plaintiff

D Seamus Kaskela
[COR LD NTC]
Barroway Topaz Kessler Meltzer & Check, LLP (Pa)
280 King of Prussia Road
Radnor , PA  19087
USA
(610) 667-7706
Fax: (610) 667-7056
Email: SKASKELA@BTKMC.COM

Evan J Smith
[COR LD NTC]
Brodsky & Smith, LLC
240 Mineola Blvd
Mineola , NY  11501
USA
516-741-4977
Email: Esmith@brodsky-Smith.com

Gildan Activewear Inc
Defendant

Steven Lyon Holley
[COR LD NTC]
Sullivan & Cromwell
125 Broad Street
New York , NY  10004
USA
(212) 558-4000
Fax: 212 558 4053
Email: HOLLEYS@SULLCROM.COM

Brian T Frawley
[COR LD NTC]
Sullivan and Cromwell, LLP(NYC)
125 Broad Street
New York , NY  10004
USA
212-558-4000
Fax: 212-558-3588
Email: FRAWLEYB@SULLCROM.COM

Laurent Stephan Wiesel
[COR LD NTC]
Sullivan and Cromwell, LLP(NYC)
125 Broad Street
New York , NY  10004
USA
(212) 558-7942
Fax: (212) 558-3588
Email: WIESELL@SULLCROM.COM

Glenn J Chamandy
Defendant

Steven Lyon Holley
[COR LD NTC]

Sullivan & Cromwell
125 Broad Street
New York , NY 10004
USA
(212) 558-4000
Fax: 212 558 4053
Email: HOLLEYS@SULLCROM.COM

Brian T Frawley
[COR LD NTC]
Sullivan and Cromwell, LLP(NYC)
125 Broad Street
New York , NY 10004
USA
212-558-4000
Fax: 212-558-3588
Email: FRAWLEYB@SULLCROM.COM

Laurent Stephan Wiesel
[COR LD NTC]
Sullivan and Cromwell, LLP(NYC)
125 Broad Street
New York , NY 10004
USA
(212) 558-7942
Fax: (212) 558-3588
Email: WIESELL@SULLCROM.COM

Laurence G Sellyn
Defendant

Steven Lyon Holley
[COR LD NTC]
Sullivan & Cromwell
125 Broad Street
New York , NY 10004
USA
(212) 558-4000
Fax: 212 558 4053
Email: HOLLEYS@SULLCROM.COM

Brian T Frawley
[COR LD NTC]
Sullivan and Cromwell, LLP(NYC)
125 Broad Street
New York , NY 10004
USA
212-558-4000
Fax: 212-558-3588
Email: FRAWLEYB@SULLCROM.COM

Laurent Stephan Wiesel
[COR LD NTC]
Sullivan and Cromwell, LLP(NYC)
125 Broad Street
New York , NY 10004
USA
(212) 558-7942
Fax: (212) 558-3588
Email: WIESELL@SULLCROM.COM

| Date | # | Proceeding Text |
|---|---|---|
| 06/02/2008 | 1 | COMPLAINT against Gildan Activewear Inc., Glenn J. Chamandy, Laurence G. Sellyn. (Filing Fee $ 350.00, Receipt Number 652809)Document filed by City of St. Clair Shores Police and Fire Retirement System.(mbe) (mbe). (Entered: 06/04/2008) |
| 06/02/2008 | -- | SUMMONS ISSUED as to Gildan Activewear Inc., Glenn J. Chamandy, Laurence G. Sellyn. (mbe) (Entered: 06/04/2008) |
| 06/02/2008 | -- | Magistrate Judge Frank Maas is so designated. (mbe) (Entered: 06/04/2008) |
| 06/02/2008 | -- | Case Designated ECF. (mbe) (Entered: 06/04/2008) |
| 06/02/2008 | 2 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by City of St. Clair Shores Police and Fire Retirement System.(mbe) (Entered: 06/04/2008) |
| 06/20/2008 | 3 | AFFIDAVIT OF SERVICE. Laurence G. Sellyn served on 6/9/2008, answer due 6/30/2008. Service was accepted by Laurence Sellyn, Personally. Document filed by City of St. Clair Shores Police and Fire Retirement System. (Rosenfeld, David) (Entered: 06/20/2008) |
| 06/20/2008 | 4 | AFFIDAVIT OF SERVICE. Gildan Activewear Inc. served on 6/9/2008, answer due 6/30/2008. Service was accepted by Laurence Sellyn, Executive Vice President. Document filed by City of St. Clair Shores Police and Fire Retirement System. (Rosenfeld, David) (Entered: 06/20/2008) |

| | | |
|---|---|---|
| 06/20/2008 | 5 | AFFIDAVIT OF SERVICE. Glenn J. Chamandy served on 6/9/2008, answer due 6/30/2008. Service was accepted by Laurence Sellyn, Executive Vice President. Document filed by City of St. Clair Shores Police and Fire Retirement System. (Rosenfeld, David) (Entered: 06/20/2008) |
| 07/10/2008 | 6 | NOTICE OF APPEARANCE by Brian T. Frawley on behalf of Gildan Activewear Inc., Glenn J. Chamandy, Laurence G. Sellyn (Frawley, Brian) (Entered: 07/10/2008) |
| 07/10/2008 | 7 | NOTICE OF APPEARANCE by Steven Lyon Holley on behalf of Gildan Activewear Inc., Glenn J. Chamandy, Laurence G. Sellyn (Holley, Steven) (Entered: 07/10/2008) |
| 07/10/2008 | 8 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Fidelity Management & Research Company as Corporate Parent. Document filed by Gildan Activewear Inc., Glenn J. Chamandy, Laurence G. Sellyn.(Frawley, Brian) (Entered: 07/10/2008) |
| 07/11/2008 | 9 | STIPULATION AND ORDER The time for plaintiff, or the individual or entity appointed lead plaintiff in accordance with 15 U.S.C. 78u-4(a)(3), to file any amended complaint in this action is extended through and including sixty (60) days after the entry of the order appointing lead plaintiff and approving of selection of lead counsel. Defendants Gildan Activewear Inc., Glenn J. Chamandy and Laurence G. Sellyns (collectively Defendants) time to answer, move or otherwise respond to the complaint in this action is extended through and including sixty (60) days after the service and filing of an amended complaint in this action. IN the event that defendants respond to the complaint or any amended complaint by motion, plaintiffs time to answer defendants motion is extended sixty (60) days after the motion is served to plaintiff, and defendants time to submit any reply papers is extended to thirty (30) days after plaintiffs service of answering submission on defendants. Neither defendants entry into this stipulation and order nor any provision of this stipulation and order shall be construed as a waiver of, and defendants expressly reserve, any and all defenses, including without limitation any and all defenses related to jurisdiction or venue. There has been no previous request for an extension of time in connection with this matter. (Signed by Judge Harold Baer on 7/11/08) (mme) (Entered: 07/11/2008) |
| 08/01/2008 | 10 | MOTION for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel. Document filed by Institutional Investor Group.(Keller, Christopher) (Entered: 08/01/2008) |
| 08/01/2008 | 11 | MEMORANDUM OF LAW in Support re: 10 MOTION for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel.. Document filed by Institutional Investor Group. (Keller, Christopher) (Entered: 08/01/2008) |
| 08/01/2008 | 12 | DECLARATION of Alan I. Ellman in Support re: 10 MOTION for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel.. Document filed by Institutional Investor Group. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Keller, Christopher) (Entered: 08/01/2008) |
| 08/01/2008 | 13 | CERTIFICATE OF SERVICE. Document filed by Institutional Investor Group. (Keller, Christopher) (Entered: 08/01/2008) |
| 08/04/2008 | 14 | NOTICE of Notice of the Police and Fire Retirement System of the City of Detroit's Filing of Motion To Consolidate Actions, to be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel. Document filed by The Police and Fire Retirement System of the City of Detroit. (Attachments: # 1 Exhibit Ex. A)(Scott, David) (Entered: 08/04/2008) |
| 08/18/2008 | 15 | RESPONSE in Support re: 10 MOTION for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel. and in Opposition to the Competing Motion. Document filed by Institutional Investor Group. (Attachments: # 1 Certificate of Service)(Keller, Christopher) (Entered: 08/18/2008) |
| 08/19/2008 | 16 | MOTION for Extension of Time to File Response/Reply to Institutional Investor Group's Motion to Appoint Lead Plaintiff. Document filed by The Police and Fire Retirement System of the City of Detroit.(Scott, David) (Entered: 08/19/2008) |
| 08/19/2008 | 17 | MEMORANDUM OF LAW in Support re: 16 MOTION for Extension of Time to File Response/Reply to Institutional Investor Group's Motion to Appoint Lead Plaintiff.. Document filed by The Police and Fire Retirement System of the City of Detroit. (Scott, David) (Entered: 08/19/2008) |
| 08/19/2008 | 18 | DECLARATION of Arthur L. Shingler III in Support re: 16 MOTION for Extension of Time to File Response/Reply to Institutional Investor Group's Motion to Appoint Lead Plaintiff.. Document filed by The Police and Fire Retirement System of the City of Detroit. (Scott, David) (Entered: 08/19/2008) |
| 08/19/2008 | 19 | FILING ERROR - DUPLICATED DOCKET ENTRY - (SEE 16 MOTION) - MOTION for Extension of Time to File Response/Reply to Institutional Investor Group's Motion to Appoint Lead Plaintiff. Document filed by The Police and Fire Retirement System of the City of Detroit. (Attachments: # 1 Text of Proposed Order)(Scott, David) Modified on 8/20/2008 (db). (Entered: 08/19/2008) |
| 08/19/2008 | 20 | MEMORANDUM OF LAW in Opposition re: 10 MOTION for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel.. Document filed by The Police and Fire Retirement System of the City of Detroit. (Scott, David) (Entered: 08/19/2008) |
| 08/26/2008 | 21 | NOTICE of of Withdrawal of Motion for Appointment as Lead Plaintiff re: 14 Notice (Other), Notice (Other). Document filed by The Police and Fire Retirement System of the City of Detroit. (Scott, David) (Entered: 08/26/2008) |
| 09/02/2008 | 22 | NOTICE of Non-Opposition re: 10 MOTION for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel.. Document filed by Institutional Investor Group. (Attachments: # 1 Certificate of Service)(Keller, Christopher) (Entered: 09/02/2008) |
| 09/16/2008 | 23 | CONSOLIDATION ORDER IT IS HEREBY ORDERED that the above-captioned cases are hereby consolidated for all purposes pursuant to Fed. R. Civ. P. 42(a); and it is further ORDERED that every pleading in the Consolidated Action shall have the following caption: IN RE GILDAN ACTIVEWEAR INC. SECURITIES LITIGATION; and it is further ORDERED that, pursuant to Fed. R. Civ. P. 42(a), the Clerk of the Court is directed to remove Police & Fire Retirement System of the City of Detroit v. Gildan Activewear Inc., et aI., 08-cv-5717, and Alejandro Alegre v. Gildan Activewear Inc., et aI., 08-cv-6144, from my docket as separate |

| | | |
|---|---|---|
| | | cases; and it is further ORDERED that the Institutional Investor Group is appointed as Lead Plaintiff of the: purported Class; and it is further ORDERED that the Institutional Investor Group's selection of Labaton Sucharow LLC and Coughlin Stoia Geller Rudman & Robbins LLP as Lead Counsel for the Class is approved; and it is further ORDERED that all patties in the Consolidated Action shall appear in my Chambers for a pretrial conference on October 2, 2008 at 1:45 p.m. (Signed by Judge Harold Baer on 9/16/08) Filed In Associated Cases: 1:08-cv-05048-HB, 1:08-cv-05717-HB, 1:08-cv-06144-HB(mme) (Entered: 09/16/2008) |
| 09/26/2008 | 24 | MOTION for Mark S. Goldman to Appear Pro Hac Vice. Document filed by Institutional Investor Group.(dle) (Entered: 09/29/2008) |
| 10/02/2008 | 25 | AMENDED ORDER: It is hereby ordered that the time for the Institutional Investor Group, which has been appointed lead plaintiff in accordance with 15 U.S.C. 78u-4(a)(3) ("Lead Plaintiff"), to file any amended complaint in this action is extended through and including thirty (30) days from the date hereof. Defendants' time to answer, move or otherwise respond to the complaint is extended through and including thirty (30) days after the service and filing of an amended complaint. In the event that Defendants respond to the complaint or any amended complaint by motion, Lead Plaintiffs time to answer Defendants motion is thirty (30) days after the motion is served, and Defendants' time to submit reply papers is fifteen (15) days after service of answering papers. Neither Defendants' entry into the July 11, 2008 Stipulation & Order, nor any provision of that Stipulation and Order or this Amended Order, shall be construed as a waiver of, and Defendants expressly reserve, any and all defenses, including without limitation any and all defenses related to jurisdiction or venue. (Signed by Judge Harold Baer on 10/2/2008) (jfe) (Entered: 10/02/2008) |
| 10/03/2008 | 26 | ORDER FOR ADMISSION PRO HAC VICE ON WRITTEN MOTION: It is hereby ordered that Mark S. Goldman is admitted to practice pro hac vice in this action. ENDORSEMENT: Application for Pro Hac Vice GRANTED. The Clerk is instructed to process this motion. (Signed by Judge Harold Baer on 10/2/2008) (jpo) (Entered: 10/03/2008) |
| 10/03/2008 | -- | Transmission to Attorney Admissions Clerk. Transmitted re: 26 Order on Motion to Appear Pro Hac Vice, to the Attorney Admissions Clerk for updating of Attorney Information. (jpo) (Entered: 10/03/2008) |
| 10/09/2008 | -- | CASHIERS OFFICE REMARK on 26 Order on Motion to Appear Pro Hac Vice, in the amount of $25.00, paid on 9/26/08, Receipt Number 664210. (Quintero, Marcos) (Entered: 10/09/2008) |
| 11/05/2008 | 27 | ENDORSED LETTER addressed to Judge Harold Baer from Jonathan Gardner dated 10/31/08 re: Counsel requests that the following schedule be approved by the Court: Lead Plaintiffs shall file their consolidated amended complaint by no later than November 17, 2008; Defendants shall file their motion to dismiss by no later than December 19, 2008; Lead Plaintiffs shall file their opposition by no later than January 19, 2009; and defendants shall file their reply by no later than February 6, 2009. ENDORSEMENT: I agree with this amended schedule. The papers will be fully briefed and in Chambers etc. by February 2, 2009. (Signed by Judge Harold Baer on 11/5/08) (mme) (mme). (Entered: 11/05/2008) |
| 11/17/2008 | 28 | CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES amending 1 Complaint against Gildan Activewear Inc., Glenn J. Chamandy, Laurence G. Sellyn. Document filed by City of St. Clair Shores Police and Fire Retirement System. Related document: 1 Complaint filed by City of St. Clair Shores Police and Fire Retirement System.(dle) (Entered: 11/18/2008) |
| 12/19/2008 | 29 | NOTICE OF APPEARANCE by Laurent Stephan Wiesel on behalf of Gildan Activewear Inc., Glenn J. Chamandy, Laurence G. Sellyn (Wiesel, Laurent) (Entered: 12/19/2008) |
| 12/19/2008 | 30 | MOTION to Dismiss. Document filed by Gildan Activewear Inc., Glenn J. Chamandy, Laurence G. Sellyn. (Wiesel, Laurent) (Entered: 12/19/2008) |
| 12/19/2008 | 31 | MEMORANDUM OF LAW in Support re: 30 MOTION to Dismiss.. Document filed by Gildan Activewear Inc., Glenn J. Chamandy, Laurence G. Sellyn. (Attachments: # 1 Appendix 1, # 2 Appendix 2, # 3 Appendix 3, # 4 Appendix 4, # 5 Appendix 5, # 6 Appendix 6, # 7 Appendix 7, # 8 Appendix 8, # 9 Appendix 9, # 10 Appendix 10, # 11 Appendix 11, # 12 Appendix 12, # 13 Appendix 13, # 14 Appendix 14, # 15 Appendix 15, # 16 Appendix 16)(Wiesel, Laurent) (Entered: 12/19/2008) |
| 01/20/2009 | 32 | FILING ERROR - DEFICIENT DOCKET ENTRY - (SEE DOCUMENT #35) - MEMORANDUM OF LAW in Opposition re: 30 MOTION to Dismiss.. Document filed by Institutional Investor Group. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Rosenfeld, David) Modified on 2/2/2009 (lb). (Entered: 01/20/2009) |
| 01/21/2009 | 33 | NOTICE OF APPEARANCE by Jonathan Gardner on behalf of Norfolk County Retirement System (Gardner, Jonathan) (Entered: 01/21/2009) |
| 01/26/2009 | 34 | ENDORSED LETTER: addressed to Judge Harold Baer from Brian T. Frawley dated 1/23/09 re: Defendant requests a one week extension of time to file their reply brief until February 9, 2009, due to scheduling conflicts during the week of February and because of the shortness of time as a result of the amended schedule and the January 19 holiday. ENDORSEMENT: One week to 2/9/09 granted. So Ordered. ( Replies due by 2/9/2009.) (Signed by Judge Harold Baer on 1/26/09) (js) (Entered: 01/26/2009) |
| 01/27/2009 | 35 | AMENDED MEMORANDUM OF LAW in Opposition re: 30 MOTION to Dismiss.. Document filed by Institutional Investor Group. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Rosenfeld, David) (Entered: 01/27/2009) |
| 02/09/2009 | 36 | REPLY MEMORANDUM OF LAW in Support re: 30 MOTION to Dismiss.. Document filed by Gildan Activewear Inc., Glenn J. Chamandy, Laurence G. Sellyn. (Wiesel, Laurent) (Entered: 02/09/2009) |
| 06/03/2009 | 37 | MOTION for Brian D. Penny to Appear Pro Hac Vice. Document filed by Norfolk County Retirement System, Institutional Investor Group.(mro) (Entered: 06/05/2009) |
| 06/16/2009 | 38 | TRANSCRIPT of proceedings held on May 19, 2009 before Judge Harold Baer. (mro) (Entered: 06/17/2009) |
| 06/19/2009 | 39 | ORDER FOR ADMISSION PRO HAC VICE ON WRITTEN MOTION granting 37 Motion for Brian D. Penny to Appear Pro Hac Vice for lead plaintiffs. (Signed by Judge Harold Baer on 6/18/09) (cd) (Entered: 06/19/2009) |
| 06/19/2009 | -- | Transmission to Attorney Admissions Clerk. Transmitted re: 39 Order on Motion to Appear Pro Hac Vice, to the Attorney Admissions Clerk for updating of Attorney Information. (cd) (Entered: 06/19/2009) |

| 06/25/2009 | -- | CASHIERS OFFICE REMARK on 37 Motion to Appear Pro Hac Vice in the amount of $25.00, paid on 06/03/2009, Receipt Number 689963. (jd) (Entered: 06/25/2009) |
| 07/01/2009 | 40 | OPINION & ORDER: #97700 that for the foregoing reasons, Defendants' motion to dismiss is GRANTED. The Clerk of this Court is directed to close this motion and to close this case and remove it from my docket. (Signed by Judge Harold Baer on 7/1/09) (pl) Modified on 7/2/2009 (jab). (Entered: 07/01/2009) |
| 07/01/2009 | -- | Transmission to Judgments and Orders Clerk. Transmitted re: 40 Memorandum & Opinion,, to the Judgments and Orders Clerk. (pl) (Entered: 07/01/2009) |
| 07/02/2009 | 41 | CLERK'S JUDGMENT That for the reasons stated in the Court's Opinion and Order dated July 1, 2009, defendants' motion to dismiss is granted; accordingly, the case is closed. (Signed by J. Michael McMahon, clerk on 7/2/09) (Attachments: # 1 notice of right to appeal)Filed In Associated Cases: 1:08-cv-05048-HB, 1:08-cv-05717-HB, 1:08-cv-06144-HB(ml) (Entered: 07/02/2009) |
| 07/17/2009 | 42 | MOTION for Reconsideration re; 40 Memorandum & Opinion,. Document filed by Norfolk County Retirement System, City of St. Clair Shores Police and Fire Retirement System, The Police and Fire Retirement System of the City of Detroit. (Attachments: # 1 Exhibit A - Proposed Order)(Rosenfeld, David) (Entered: 07/17/2009) |
| 07/17/2009 | 43 | MEMORANDUM OF LAW in Support re: 42 MOTION for Reconsideration re; 40 Memorandum & Opinion,. MOTION for Reconsideration re; 40 Memorandum & Opinion,.. Document filed by Norfolk County Retirement System, City of St. Clair Shores Police and Fire Retirement System, The Police and Fire Retirement System of the City of Detroit. (Attachments: # 1 Exhibit A - Transcript of 5/19/09 Oral Argument)(Rosenfeld, David) (Entered: 07/17/2009) |
| 07/31/2009 | 44 | MEMORANDUM OF LAW in Opposition re: 42 MOTION for Reconsideration re; 40 Memorandum & Opinion,. MOTION for Reconsideration re; 40 Memorandum & Opinion,.. Document filed by Gildan Activewear Inc., Glenn J. Chamandy, Laurence G. Sellyn. (Attachments: # 1 Exhibit A)(Wiesel, Laurent) (Entered: 07/31/2009) |
| 08/05/2009 | 45 | NOTICE OF APPEARANCE by Erin Whitney Boardman on behalf of Norfolk County Retirement System, City of St. Clair Shores Police and Fire Retirement System, The Police and Fire Retirement System of the City of Detroit (Boardman, Erin) (Entered: 08/05/2009) |
| 08/10/2009 | 46 | REPLY MEMORANDUM OF LAW in Support re: 42 MOTION for Reconsideration re; 40 Memorandum & Opinion,. MOTION for Reconsideration re; 40 Memorandum & Opinion,.. Document filed by Institutional Investor Group. (Rosenfeld, David) (Entered: 08/10/2009) |
| 12/04/2009 | 47 | OPINION & ORDER #98315 that for the reasons set forth herein plaintiffs' motion for reconsideration is denied. (Signed by Judge Harold Baer on 12/4/09) (dle) Modified on 12/8/2009 (eef). (Entered: 12/04/2009) |

## Judgments

| Date | In Favor Of | Against | Amount | Interest | Court Cost | Status | Status Date |
|---|---|---|---|---|---|---|---|
| 07/02/2009 | Glenn J. Chamandy | Alejandro Alegre | $ 0.00 | 0.00% | $ 0.00 | No Payment | 07/02/2009 |
| 07/02/2009 | Glenn J. Chamandy | City of St. Clair Shores Police and Fire Retirement System | $ 0.00 | 0.00% | $ 0.00 | No Payment | 07/02/2009 |
| 07/02/2009 | Glenn J. Chamandy | Institutional Investor Group | $ 0.00 | 0.00% | $ 0.00 | No Payment | 07/02/2009 |
| 07/02/2009 | Glenn J. Chamandy | Norfolk County Retirement System | $ 0.00 | 0.00% | $ 0.00 | No Payment | 07/02/2009 |
| 07/02/2009 | Glenn J. Chamandy | The Police and Fire Retirement System of the City of Detroit | $ 0.00 | 0.00% | $ 0.00 | No Payment | 07/02/2009 |
| 07/02/2009 | Gildan Activewear Inc. | Alejandro Alegre | $ 0.00 | 0.00% | $ 0.00 | No Payment | 07/02/2009 |
| 07/02/2009 | Gildan Activewear Inc. | City of St. Clair Shores Police and Fire Retirement System | $ 0.00 | 0.00% | $ 0.00 | No Payment | 07/02/2009 |
| 07/02/2009 | Gildan Activewear Inc. | Institutional Investor Group | $ 0.00 | 0.00% | $ 0.00 | No Payment | 07/02/2009 |
| 07/02/2009 | Gildan Activewear Inc. | Norfolk County Retirement System | $ 0.00 | 0.00% | $ 0.00 | No Payment | 07/02/2009 |
| 07/02/2009 | Gildan Activewear Inc. | The Police and Fire Retirement System of the City of Detroit | $ 0.00 | 0.00% | $ 0.00 | No Payment | 07/02/2009 |
| 07/02/2009 | Laurence G. Sellyn | Alejandro Alegre | $ 0.00 | 0.00% | $ 0.00 | No Payment | 07/02/2009 |
| 07/02/2009 | Laurence G. Sellyn | City of St. Clair Shores Police and Fire Retirement System | $ 0.00 | 0.00% | $ 0.00 | No Payment | 07/02/2009 |
| 07/02/2009 | Laurence G. Sellyn | Institutional Investor Group | $ 0.00 | 0.00% | $ 0.00 | No Payment | 07/02/2009 |
| 07/02/2009 | Laurence G. Sellyn | Norfolk County Retirement System | $ 0.00 | 0.00% | $ 0.00 | No Payment | 07/02/2009 |
| 07/02/2009 | Laurence G. Sellyn | The Police and Fire Retirement System of the City of Detroit | $ 0.00 | 0.00% | $ 0.00 | No Payment | 07/02/2009 |

Copyright © 2009 LexisNexis CourtLink, Inc. All rights reserved.
*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
                                         :       **08 Civ. 5048 (HB)**

**In re GILDAN ACTIVEWEAR, INC.**    :
**SECURITIES LITIGATION**           :       **OPINION & ORDER**
                                           :
-------------------------------------------------------------------------x
                                         :
**This Document Relates To:**        :
**ALL ACTIONS**                     :
                                         :
-------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., United States District Judge:**

      Plaintiffs, purchasers of the common stock of Gildan Activewear, Inc. ("Gildan" or the

"Company") between August 2, 2007 and April 29, 2008 (the "Class Period"), brought this putative

class action against Gildan and two of its officers and directors – Glenn Chamandy ("Chamandy")

and Laurence Sellyn ("Sellyn") (collectively, the "Individual Defendants") – alleging violations of

sections 10(b) and 20(a) of the Securities Exchange Act of 1934.[1]  Plaintiffs filed a Consolidated

Amended Class Action Complaint (the "Complaint") on November 17, 2008.  Defendants moved to

dismiss the Complaint pursuant to the Private Securities Litigation Reform Act ("PSLRA") and

Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.  For the reasons set forth below,

Defendants' motion to dismiss is granted.

## I. FACTUAL BACKGROUND

      Gildan, headquartered in Montreal, Canada, is a leading supplier of activewear for the

wholesale imprinted sportswear market in the United States, Canada and Europe. Compl. ¶ 17, 40.

The company's core wholesale business consists of the manufacture and distribution of activewear

"blanks," namely T-shirts, fleece and sports shirts that are produced and sold in large quantities to

wholesalers to be subsequently customized by screen printers with designs and logos.[2]  *Id.*  Gildan

was incorporated as a private company in May 1984 and completed an initial public offering on

June 17, 1998. *See* 2007 Form 40-F (App. 8) at 1.  Its common stock is listed and traded on the

New York Stock Exchange and the Toronto Stock Exchange. *See* Compl. ¶ 17.

---

[1] Three separate securities fraud lawsuits were initially filed against Gildan; these actions were consolidated before this
Court on September 16, 2008.
[2] As described in further detail below, Gildan also acquired Kentucky Derby Hosiery ("KDH") to enable it to expand
into the sock and hosiery business.

**Problems in the Dominican Republic Manufacturing Facility**

Historically, Gildan had manufactured its products primarily in facilities in Canada and the United States; however, in an effort to reduce costs, Gildan opened a textile facility in Honduras in 2002 and a second facility in the Dominican Republic in 2005. Compl. ¶ 44. The Honduras and Dominican Republic facilities initially manufactured relatively simple products, but in March 2007, Gildan transferred its primary manufacturing capacity to the Dominican facility, where it began to manufacture more technically advanced products, such as ring-spun cotton polo shirts. *Id.* ¶¶ 4, 44. Plaintiffs allege that the Dominican facility encountered regular maintenance issues and problems with production from the time the plant's equipment was first installed in 2005 and 2006. *Id.* ¶ 55. However, these issues came to a head when Gildan began to transfer additional production to the Dominican facility in 2007. Plaintiffs allege that, unbeknownst to investors, soon after the primary manufacturing business was transferred to the Dominican facility, it began to experience severe production problems and struggled with chronic issues such as layoffs and employee turnover, ineffective management, unrealistic production goals, machine failure and malfunctions and environmental issues. *Id.* ¶¶ 59-63. By May 2007, Gildan's headquarters began closely to oversee the Dominican facility and sent additional Canadian managers to oversee the management at the plant. *Id.* ¶ 47. A restructuring of management and staff followed, leading to layoffs and the replacement of certain management. *Id.* ¶¶ 48-50. The Dominican facility continued to have problems with its equipment, but "management repeatedly misdiagnosed the problems as technical rather than maintenance issues." *Id.* ¶ 56.

In approximately November 2007, in response to these problems, Gildan instituted a "crisis management restructuring" plan, which led to even closer monitoring of the management and production of the Dominican plant. *See id.* ¶¶ 57-61, 66-70. Ultimately, Plaintiffs allege the Dominican facility "was not efficient" compared to the Honduras facility and could not "absorb the additional capacity demands resulting from the transfer of North American capacity to the facility." *Id.* ¶ 64, 72. Plaintiffs do not, however, allege that the facility failed to meet production goals or that Gildan ever failed to meet earnings forecasts prior to the first quarter of 2008. In fact, throughout the period during which the Dominican facility was experiencing these major problems, Gildan posted record profits every quarter and met or exceeded its earnings projections throughout the 2007 fiscal year and the first quarter of fiscal year 2008. *See* 5/7/08 Trans. (App. 15) at 2, 3.

2

**Integration with Kentucky Derby Hosiery**

In the midst of setting up its operations at the Dominican facility, Gildan announced on July 6, 2006 that it had acquired Kentucky Derby Hosiery ("KDH"), a North American specialty hosiery company. Compl. ¶ 74. KDH's business centered largely on the sale of specialized sock products (*i.e.*, socks imprinted with logos, mascots and the like) to major retailers. *Id.* ¶ 75. Gildan's continued production of only generic sock products after acquiring KDH impaired its relationship with a number of KDH's largest customers. *See id.* ¶ 77. As a result, Gildan was left holding millions of dollars of inventory that it could no longer sell and that had to be carried at the lower of cost or market value. *Id.* ¶ 78. Plaintiffs allege that at least by January 30, 2008, Gildan knew that it needed to write-down the inventory it was unable to sell, but that it did not announce the write-down until April 29, 2008. *See id.*; *id.* ¶¶ 113, 124. Also, Gildan faced difficulties and incurred costs in relation to the integration of KDH's computer systems with its own, resulting in some missed or improperly entered orders and additional shipping and restocking costs. *Id.* ¶ 79, 120.

**Gildan's Statements Regarding Earnings Projections and Dominican Facility Issues**

On August 2, 2007, Gildan issued a press release announcing its fiscal third quarter 2007 results and its initial earnings guidance for fiscal year 2008. *Id.* ¶ 81. In that announcement, Gildan stated that it had "initiated its [earnings per share] guidance for fiscal 2008 with a range of U.S. $1.80 – U.S. $1.85 per share . . . up approximately 39-40% from fiscal 2007." *Id.* The press release added that "[t]he projected growth in [earnings per share] in fiscal 2007 is driven primarily by the impact of relocating the Canadian textile operations and completing the ramp-up of the Company's offshore textile facilities in Honduras and the Dominican Republic, unit volume growth in activewear, and the expected EPS accretion from having completed the integration of [KDH]." *Id.* Sellyn then held a conference call with analysts, in which he reiterated cost savings the Company would obtain as a result of moving its production offshore and its integration with KDH. *Id.* ¶ 82. Sellyn also emphasized "improved efficiencies" in the Dominican and Honduran facilities, "where [the Company] experienced some short-term operating issues in the third quarter." *Id.* On August 7, 2007, Gildan filed its Form 6-K quarterly report for the period ending July 1, 2007, which stated that the Dominican facility was "running at a comparable scale of production to [Gildan's] mature textile facility in Honduras" and that the Company would "continue to maximize production levels and cost efficiencies at the Dominican Republic facility during the balance of fiscal 2007." *Id.* ¶ 85.

On September 18, 2007, Gildan issued another press release announcing, among other things, an increase in its fiscal year 2008 earnings guidance. *Id.* ¶ 87. Specifically, Gildan

3

announced that it "now expects to achieve or exceed the high end of its previously announced earnings guidance range for fiscal 2008 of U.S. $1.80-$1.85 per share, representing an increase of over 40% compared with the Company's fiscal 2007 projected EPS of approximately U.S. $1.30 before restructuring charges." *Id.* After this announcement was made, Gildan's stock rose $4.25 per share, or 13%, to close at $35.92 per share. *Id.* ¶ 88.

On December 6, 2007, Gildan announced its financial results for fiscal fourth quarter and year-end of 2007, the period ending September 30, 2007. *Id.* ¶ 90. Among other results, the Company "reconfirmed its previous EPS guidance for fiscal 2008 of U.S. $1.85 per share, up 43% from U.S. $1.29 per share . . . in fiscal 2007." *Id.* In a conference call the same day, Sellyn noted additional problems with the Dominican facility, but assured investors that the problems had been corrected. *Id.* ¶ 93. He stated that "[a]lthough [Gildan] achieved [its] projected EPS growth, EBITDA was lower than previously projected for three reasons," one of which was the Company's being "unable to fully capitalize on market demand for high-volume hooded fleece and golf shirts as a result of temporary inventory constraints due to transitioning our Canadian textiles to . . . the Dominican Republic." *Id.* During the conference call, an analyst asked Sellyn whether the below-expectation EBITDA was "all behind [Gildan] now" or whether the market "could . . . see some of that Canadian production transition still affecting margins going into the next quarter." *Id.* ¶ 95. Sellyn responded by assuring investors that "everything is running at 100% and that's all behind us" and that the Company believed it was "well positioned to achieve or exceed [its] growth projections for fiscal 2008." *Id.* On December 19, 2007, Gildan filed its Form 40-F Annual Report for fiscal year 2007. In the Annual Report, Gildan stated that the production at the Dominican facility was "running at a comparable scale of production to our mature textile facility in Honduras." *Id.* ¶ 98.

On January 15, 2008, Gildan issued a press release stating that it "continue[d] to be comfortable with its most recent EPS guidance, . . . and confirm[ed] that it expect[ed] to achieve or exceed its EPS guidance of U.S. $0.21 for the first quarter of fiscal 2008." *Id.* ¶ 101. This position was reiterated at a conference on January 16, where Sellyn noted that the earnings guidance largely was driven by anticipated cost savings resulting from the transfer of production capacity to lower-cost production centers in the Dominican Republic and Honduras. *Id.* ¶ 104. On January 30, 2008, Gildan issued another press release to announce its financial results for the fiscal first quarter of 2008, for the period ending December 30, 2007. *Id.* ¶ 106. In that announcement, the Company increased its earnings guidance to between $1.85 and $1.90 for fiscal year 2008. *Id.* On February 11, 2008, Gildan filed its Form 6-K quarterly report for the period ending December 30, 2007, in

4

which it again stated that the Dominican Republic facility was "currently running at a comparable scale of production to our mature textile facility in Honduras." *Id.* ¶ 111.

## Sales of Stock by Defendants Chamandy and Sellyn

Between June and December 2007, Defendant Chamandy, Gildan's CEO and member of its board of directors, sold 3.6 million shares of his personally-held Gildan stock, of which almost 2.5 million shares were sold during the Class Period. Over two days in December 2007, Defendant Sellyn, Gildan's CFO and member of its board of directors, sold 20,000 shares of his Gildan stock. *Id.* ¶¶ 100, 132-34. The Individual Defendants' sales of shares amounted to gross proceeds in excess of a combined $96 million during the Class Period. *Id.* ¶¶ 132-33.

## Gildan's Reduction of Fiscal 2008 Earnings-Per-Share Guidance

On April 29, 2008, Gildan issued a press release reducing its earnings guidance from $0.42 per share to $0.35 per share for the second fiscal quarter 2008 and from $1.85-$1.90 per share to $1.45-$1.50 per share for the full fiscal year 2008. *Id.* ¶ 113. The Company stated it had had "lower than anticipated growth in the second fiscal quarter . . . primarily due to lower than projected unit sales growth in activewear as a result of a shortfall in production for the Dominican Republic textile facility, a write-down of inventories of discontinued retail product-lines pursuant to the rationalization of Gildan's product-mix within the sock category, and additional costs incurred to service mass-market retailers during integration of retail information systems." *Id.* That is, Gildan's announcement placed the blame for its reduced earnings guidance on the problems at the Dominican facility as well as the problems that arose after the Company acquired KDH, the North American hosiery company, in July 2006. That day, April 29, Gildan's stock prices fell $10.99 per share, or 30%, to close at $24.93. *Id.* ¶ 116. A week later, on May 7, 2008, Gildan announced actual earnings consistent with its revised earnings guidance. *Id.* ¶ 117. On a conference call with analysts, Defendant Chamandy acknowledged that "[t]he bulk of the problems really occurred in March," and that the problems initially were not believed to be material, but were subsequently found "to be greater than [Gildan] anticipated." *Id.* ¶ 126.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must accept the facts alleged in the complaint as true, even if doubtful, and draw all

5

reasonable inferences in favor of the nonmoving party. *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008). The Court must apply a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). This standard requires "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).[3]

A securities fraud claim must also satisfy the heightened pleading requirements of the PSLRA and Rule 9(b) by stating with particularity the circumstances constituting fraud. *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citations omitted). To comply with Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). Under the PSLRA, a complaint must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading," and must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1), (2). Thus, although courts "normally draw reasonable inferences in the non-movant's favor on a motion to dismiss, the PSLRA establishes a more stringent rule for inferences involving scienter because the PSLRA requires particular allegations giving rise to a strong inference of scienter." *ECA*, 553 F.3d at 196 (quoting *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 194 (2d Cir. 2008)) (internal quotation marks omitted). As the Supreme Court recently noted, Congress included "[e]xacting pleading requirements . . . among the control measures" in the PSLRA to act "[a]s a check against abusive litigation by private parties." *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

---

[3] In deciding a motion to dismiss, a court may consider documents attached as exhibits to the complaint or incorporated into the complaint by reference, documents that are integral to the plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken. *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992); *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991); *Thomas v. Westchester County Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002). In a securities fraud case, courts may also "take judicial notice of and consider the contents of documents that are required by law to be filed with the SEC." *In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 338 (W.D.N.Y. 2008) (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)).

6

## III. DISCUSSION

### A.    PSLRA Standards

Plaintiffs' principal claims are brought under section 10(b) of the Exchange Act, 15 U.S.C. §
78j(b). This provision makes it unlawful to "use or employ, in connection with the purchase or sale
of any security . . . any manipulative or deceptive device or contrivance in contravention of such
rules and regulations as the Commission may proscribe." *Id.* Rule 10b-5, which implements the
statute, prohibits "mak[ing] any untrue statement of a material act or [omitting] to state a material
fact necessary in order to make the statements made, in light of the circumstances under which they
were made, not misleading." 17 C.F.R. § 240.10b-5(b) (2008). To state a claim for securities fraud
under § 10(b) and Rule 10b-5, a plaintiff must allege (1) a material misrepresentation or omission;
(2) scienter; (3) connection with the purchase or sale of a security; (4) reliance; (5) economic loss;
and (6) loss causation. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 446, 341-42 (2005).

### B.    Scienter

As noted, the PSLRA requires a plaintiff to plead with particularity facts giving rise to a
strong inference of scienter, *i.e.*, the defendant's intent to deceive, manipulate or defraud. *See
Tellabs*, 551 U.S. at 313.[4] As the Court held in *Tellabs*, to constitute a "strong inference," an
inference of scienter must be "more than merely plausible or reasonable – it must be cogent and at
least as compelling as any opposing inference of nonfraudulent intent." 551 U.S. at 314. To
determine whether a strong inference of scienter is raised, "courts must consider both the inferences
urged by the plaintiff and any competing inferences rationally drawn from all the facts alleged,
taken collectively." *ECA*, 553 F.3d at 198. Thus, a court must ask, "When the allegations are
accepted as true and taken collectively, would a reasonable person deem the inference of scienter at
least as strong as any opposing inference?" *Tellabs*, 551 U.S. at 326. Scienter can be established
by alleging sufficient facts to show either (1) that defendants had the motive and opportunity to
commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness. *E.g.*,
*ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (citing *Ganino v. Citizens
Utils. Co.*, 228 F.3d 154, 168-69 (2d Cir. 2000)).

#### 1.    *Motive and Opportunity*

To allege Defendants' motive sufficient to raise a strong inference of scienter, Plaintiffs
must allege "concrete benefits that could be realized by one or more of the false statements and

---

[4] In addition to intent, recklessness is a sufficiently culpable mental state for securities claims in this Circuit. *ECA*, 553
F.3d at 198 (citing *Teamsters*, 531 F.3d at 194).

7

wrongful nondisclosures alleged." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). "General allegations that defendants acted in their economic self-interest are not enough." *Ganino*, 228 F.3d at 170. In this case, the sole facts on which Plaintiffs rely to allege motive are that Defendants Chamandy and Sellyn sold a substantial number of their shares in Gildan during or shortly before the Class Period. *See* Compl. ¶¶ 100, 132-34. However, "[t]he mere fact that insider stock sales occurred does not suffice to establish scienter." *In re Bausch & Lomb*, 592 F. Supp. 2d at 334. Rather, to satisfy this element, Plaintiffs must establish that the sales were "unusual" or "suspicious." *See, e.g., Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995); *In re Health Mgmt. Sys., Inc. Sec. Litig.*, No. 97 Civ. 1865 (HB), 1998 U.S. Dist. LEXIS 8061, at *18 (S.D.N.Y. June 1, 1998) ("Unusual insider trading activity during the class period may permit an inference of scienter; however, plaintiffs bear the burden of showing that any such sales are in fact unusual."). "Insider stock sales are unusual where the trading was in amounts dramatically out of line with prior trading practices and at times calculated to maximize personal benefit from undisclosed inside information." *In re Glenayre Techs., Inc. Sec. Litig.*, No. 96 Civ. 8252 (HB), 1998 U.S. Dist. LEXIS 20344, at *11 (S.D.N.Y. Dec. 30, 1998), *aff'd, Kwalbrun v. Glenayre Techs., Inc.*, 201 F.3d 431 (2d Cir. 1999); *see also In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74-75 (2d Cir. 2001). Further, total sales amounting to a relatively low percentage of an insider's percentage of stock holdings militate against an inference of scienter. *See, e.g., Acito*, 47 F.3d at 54 (sale of 11% of defendant's holdings not unusual); *In re Glenayre*, 1998 U.S. Dist. LEXIS 20344 at *12 (no inference of scienter where sales represented 5% of cumulative stock holdings); *In re Health Mgmt.*, 1998 U.S. Dist. LEXIS 8061 at *18 & n.3 (sales during class period ranging from 3% to 81.9% of holdings not suspicious when viewed in light of other relevant factors).

Plaintiffs allegations fail to raise the requisite strong inference of scienter based on the Individual Defendants' motive and opportunity. First, the value and volume of shares that the Individual Defendants sold as compared to their total holdings was not unusual and does not raise a strong inference of scienter. While Plaintiffs allege that the Individual Defendants' insider sales amounts to $96 million in gross proceeds during the Class Period, they fail to allege any facts relating to the amount of profit the Individual Defendants garnered from their sales. See In re Scholastic, 252 F.3d at 74-75. The Individuals Defendants' sales were also relatively small in volume compared to overall holdings. Taking into account their complete portfolios of shares, the

8

stock sales amounted to only 22.5% and 4.9% of Chamandy's and Sellyn's holdings, respectively.[5]

Moreover, all insider sales alleged in the Complaint occurred on or before December 21, 2007, far

in advance of the January 30 press release increasing the earnings projections and the April 29

announcement allegedly revealing the "truth" about the Company's problems. Thus, Plaintiffs'

allegations are empty vessels, as the trades occurred weeks before the principal allegation of

material misstatement, and many months before the release of any negative information that caused

Gildan's stock price to plummet. *See, e.g., In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d

247, (S.D.N.Y. 2008) (lapse of "approximately four months between these substantial sales and the

revelation of the alleged falsity[] inescapably attenuates any inference of scienter"); *In re Keyspan*

*Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 385 (E.D.N.Y. 2003) (finding four- to six-week gap between

stock sales and release of negative information not indicative of suspicious trading in light of other

relevant factors).

    Further, Plaintiffs have alleged insider trading by only two Gildan insiders; the absence of

any allegations of other insider trades before Gildan announced the impact of the issues at the

Dominican facility and the KDH integration undercuts any finding of the requisite strong inference

of scienter. *See In re Glenayre*, 1998 U.S. Dist. LEXIS 20344 at *13; *In re Health Mgmt.*, 1998

U.S. Dist. LEXIS 8061 at *18; *see also Acito*, 47 F.3d at 54 ("The fact that [other insiders] did not

sell their shares during the relevant class period undermines plaintiffs' claim that defendants

delayed notifying the public 'so that they could sell their stock at a huge profit.'") (citations

---

[5] Plaintiffs allege in their Complaint that "Chamandy sold 25% of his total holdings of Gildan Common Stock and Defendant Sellyn sold 53% of his total holdings." Compl. ¶ 134. Gildan's SEC filings reveal that after Chamandy sold his shares, his total beneficial ownership was approximately 7.5 million shares; Sellyn's beneficial ownership totaled approximately 386,000 shares. *See* 12/20/07 Form 6-K (App. 7) at 23, 26. Thus, taking into account the Individual Defendants' total beneficial ownership in the Company, their sales constituted a substantially smaller portion of their holdings than Plaintiffs allege. These figures of total shareholdings include restricted stock and exercisable and unexercisable options. There appears to be some disagreement among the courts of this Circuit, as well as in other jurisdictions, regarding whether it is appropriate to take into account options when calculating volume of sales relative to total shareholdings, and if so, whether courts should consider unvested as well as vested options. *Compare Acito*, 47 F.3d at 54 (calculating volume of shareholdings by including unexercisable options); *In re Espeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, (S.D.N.Y. 2006) (counting vested, but not unvested, options); *In re Keyspan*, 383 F. Supp. 2d at 383 (taking into account defendant's shares purchased through options); *with In re EVCI Colleges Holding Corp. Sec. Litig.*, 469 F. Supp. 2d 88, 100 (S.D.N.Y. 2006) (finding vested but unexercised options are not shareholdings); *In re Oxford Health Plans, Inc.*, 187 F.R.D. 133 (S.D.N.Y. 1999) (finding vested options are not shares and should not be considered in volume of shareholdings); *see also Rothman*, 220 F.3d at 94 (calculating volume of shareholdings by including all shares beneficially owned); *In re Astea Int'l Inc. Sec. Litig.*, No. 06-1467, 2007 U.S. Dist. LEXIS 58238, at *42-44 & n.18 (E.D. Pa. Aug. 7, 2007) (explaining relevance of accounting for vested and unvested options in insider's shareholdings). While the Second Circuit has not spoken explicitly to this issue, it appears that the weight of the authority, including the Second Circuit's implicit reasoning in *Acito*, lends credence to the position that options are to be taken into account in comparing the volume of an insider's sales to his shareholdings. However, even if these options were not taken into account – and if Chamandy's and Sellyn's trades did account for 25% and 53%, respectively, as Plaintiffs contend – based on the other relevant factors to be considered, I find that Plaintiffs have not adequately pled that the trades in question in this case were "unusual."

omitted). The Complaint alleges that the Dominican facility was closely overseen by numerous executives from the Company's Canadian headquarters; Plaintiffs' silence as to any evidence of insider trading by these executives makes Plaintiffs' position even more tenuous. Finally, Chamandy's sales, which comprise over 99% of the total insider trading, both by volume and value, were made pursuant to a non-discretionary Rule 10b5-1 trading plan, which undermines any allegation that the timing or amounts of the trades was unusual or suspicious. *See, e.g., Fishbaum v. Liz Claiborne, Inc.*, No. 98-9396, 1999 WL 568023, at *4 (2d Cir. 1999) (insider trades not unusual because, among other reasons, two defendants' stock sales were made pursuant to periodic divestment plans); *In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp. 2d 574, 604 (S.D.N.Y. 2007) (trades under 10b5-1 plan "do not raise a strong inference of scienter"); *see also Elam v. Neidorff*, 544 F.3d 921, 928 (8th Cir. 2008) ("Stock sales pursuant to Rule 10b-5 trading plans can raise an inference that the sales were prescheduled and not suspicious."). In light of all the relevant factors, this Court finds that Plaintiffs have failed adequately to allege motive and opportunity sufficient for a finding of scienter.

### 2. *Recklessness*

When plaintiffs are unable to make the "motive" showing, they might nonetheless raise a strong inference of scienter under the "strong circumstantial evidence" prong, "though the strength of the circumstantial allegations must be correspondingly greater" if there is no motive. *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (citation omitted). To survive dismissal under this prong, plaintiffs "must show that they alleged reckless conduct by the [defendants], which is at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Honeyman v. Hoyt (In re Carter-Wallace, Inc. Sec. Litig.)*, 220 F.3d 36, 39 (2d Cir. 2000). To state a claim based on recklessness, plaintiffs may either "specifically allege defendants' knowledge of facts or access to information contradicting defendants' public statements, or allege that defendants failed to check information they had a duty to monitor." *Montoya v. Mamma.Com Inc.*, 05 Civ. 2313 (HB), 2006 U.S. Dist. LEXIS 13207, at *17-18 (S.D.N.Y. Mar. 28, 2006) (quoting *Novak v. Kasaks*, 216 F.3d 300, 308, 311 (2d Cir. 2000)) (internal quotation marks and alterations omitted). Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information to indicate how it was inconsistent with the statements made. *Id.* at *18; *see also Teamsters*, 531 F.3d at 196; *Ressler v. Liz Claiborne, Inc.*, 75 F. Supp. 2d 43, 52 (E.D.N.Y. 1998)

10

("To withstand a motion to dismiss, a plaintiff must detail specific contemporaneous data or information known to the defendant that was inconsistent with the representation in question."), *aff'd*, 189 F.3d 460 (2d Cir. 1999). Importantly, the Second Circuit has "refused to allow plaintiffs to proceed with allegations of 'fraud by hindsight.' Corporate officials need not be clairvoyant; . . . [t]hus, allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim for securities fraud." *Novak*, 216 F.3d at 309. Moreover, "as long as the public statements are consistent with reasonably available data, corporate officials need not present an overly gloomy or cautious picture of current performance and future prospects." *Id.*

Plaintiffs' primary contention supporting an inference of recklessness is that Gildan was experiencing significant problems at its Dominican Republic plant that made it "impossible" or "patently unrealistic" for it to achieve its projected earnings, and that the Company's internal modeling should have made them aware of that fact. *See* Compl. ¶¶ 83, 89, 92, 97, 103, 105, 107. However, Plaintiffs do not allege any facts to suggest what those models revealed at the time, or what effect the models might have had on Gildan's financial results. Thus, while it would be troubling if the Company had been aware that the problems at the Dominican facility contradicted their bullish comments about projected earnings, Plaintiffs have failed to allege with the requisite specificity exactly what contemporaneous data Defendants had, even to be able to suggest such knowledge.[6] The Complaint's general allegations that, by virtue of their senior positions at Gildan, the Individual Defendants necessarily had access to nonpublic information, are insufficient to show recklessness under the law of this Circuit. *See City of Brockton Ret. Sys. v. Shaw Group, Inc.*, 540 F. Supp. 2d 464, 473 (S.D.N.Y. 2008); *In re Health Mgmt.*, 1998 U.S. Dist. LEXIS 8061 at *17-18 ("[C]ourts have routinely rejected the attempt to plead scienter based on allegations that because of defendants' board membership and/or their executive managerial positions, they had access to information concerning the company's adverse financial outlook.") (citations omitted); Compl. ¶¶ 21, 162.

Moreover, Plaintiffs' allegations fail to plead any, let alone sufficient, facts supporting a finding of scienter based on problems associated with the KDH integration. As noted above,

---

[6] Plaintiffs attempt to refute Defendants' contention that the Complaint lacks specific reports or statements containing contrary facts by pointing to ¶¶ 62-66. However, those paragraphs merely contain generalities concerning the condition of the plant and conclusory statements that the Dominican facility was not, among other things, "efficient, nor was it ever able to absorb . . . additional capacity demands." *E.g.*, *id.* ¶ 64. These allegations do not state what Defendants actually knew about these conditions, or specific data that was available to them, sufficient to withstand scrutiny on the recklessness prong of the scienter inquiry.

11

Plaintiffs allege that Gildan was required to write-down unsellable inventory and experienced delays and costs as a result of integrating KDH's computer system with its own platform. Plaintiffs contend that Gildan should have been aware of these integration problems and the need to write down inventory "at least . . . by the time Defendants issued their second quarter earnings guidance on January 30, 2008." *Id.* ¶ 124. Yet, the Complaint contains no allegations as to when those facts became known, or how or why Defendants should have learned of any developments that made the integration more costly than anticipated. Indeed, the integration allegations relate largely to Gildan having "alienated" customers by abandoning KDH's specialty hosiery business, but the Complaint contains no factual allegations relating to when this occurred, when or how the Company learned or should have learned of it, or the effect it had on Gildan's business. Plaintiffs point to the fact that Sellyns admitted two years after the acquisition that the transition did not run smoothly and had resulted in missed sales. *See id.* ¶ 120. However, as noted, scienter may not be established by hindsight, and these allegations do nothing to illustrate that Defendants knew or should have known at the time that the costs associated with the integration were inconsistent with their ambitious earnings guidance. Accordingly, the allegations surrounding KDH do not give rise to any inference of scienter.

## C. Material Misrepresentation

Having found that Plaintiffs failed adequately to plead scienter, it is not strictly necessary to address whether the Complaint alleges material misstatements or omissions as required by the PSLRA. However, it is worth noting that corporate executives are entitled to express ordinary corporate optimism, or "puffery," without exposing themselves to liability under the PSLRA, as these "statements are too general to cause a reasonable investor to rely upon them." *E.g., ECA*, 553 F.3d at 206; *see also Steinberg v. Ericsson LM Tel. Co.*, No. 07 CV. 9615 (RPP), 2008 WL 5170640, at \*9 (S.D.N.Y. Dec. 10, 2008) (statements that the company would "continue to do well and gain market share and outperform the competition were, without more, simply expressions of confidence in the viability of [defendant's] future business which do not give rise to a securities violation"). Here, Gildan's statements that it would "continue to maximize production," Compl. ¶¶ 86, 99, 112, or was "leveraging the expertise" of its Honduran management team, *id.* ¶ 109, were simply vague expressions of optimism about the ability of the Dominican facility to ramp-up production. Indeed, although Plaintiffs allege the Dominican facility encountered difficulties in production and management from the time it opened in 2005, they never allege (nor can they) that these troubles affected Gildan's earnings or profits. Plaintiffs show no reason, therefore, why

12

Defendants could not maintain optimism about the Company's ability to continue its performance notwithstanding the troubles at the Dominican plant. Accordingly, the Complaint fails to allege sufficiently specific facts that show any actionable misrepresentations or omissions by the Defendants.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.[7] The Clerk of this Court is directed to close this motion and to close this case and remove it from my docket.

IT IS SO ORDERED.
New York, New York
July ___, 2009

U.S.D.J.

---

[7] Having failed sufficiently to plead a primary violation of the Exchange Act, Plaintiffs' cause of action under § 20(a) is likewise dismissed. *See Ganino*, 228 F.3d at 170 ("To make out a prima facie case under § 20(a) of the Exchange Act, a plaintiff must show a primary violation . . . by the controlled person . . . .") (quoting *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
                                                            :
In re GILDAN ACTIVEWEAR, INC.                               :
SECURITIES LITIGATION                                       :
                                                            :       08 Civ. 5048 (HB)
-----------------------------------------------------------------------x
                                                            :
This Document Relates To:                                   :       OPINION & ORDER
ALL ACTIONS                                                 :
                                                            :
-----------------------------------------------------------------------x

### Hon. HAROLD BAER, JR., United States District Judge:

Plaintiffs, purchasers of the common stock of Gildan Activewear, Inc. ("Gildan" or the "Company") brought this case on behalf of themselves and all others similarly situated against Gildan and two of its officers and directors (collectively, "Defendants"), alleging violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Defendants moved to dismiss the Consolidated Amended Class Action Complaint (the "Complaint") pursuant to the Private Securities Litigation Reform Act ("PSLRA") and Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. On July 1, 2009, this Court issued an Opinion and Order granting Defendants' motion and dismissing the case in its entirety. *See In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261 (S.D.N.Y. 2009). Plaintiffs have now moved for reconsideration of the July 1, 2009 Opinion, pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Local Rule 6.3, solely to the extent that it dismissed the Complaint with prejudice.[1]  For the reasons set forth below, Plaintiffs' motion is denied.

### I. BACKGROUND

The facts underlying this case were discussed at considerable length in the July 1, 2009 Opinion, and familiarity is presumed. *See In re Gildan*, 636 F. Supp. 2d at 265-68. However, a brief review of the procedural history of this case is necessary to put Plaintiffs' motion in context and to demonstrate Plaintiffs' previous opportunities to amend their complaint, as they implicitly seek leave to do by means of their instant motion.

---

[1] Plaintiffs have not, however, explicitly moved for leave to amend the Complaint pursuant to Rule 15(a). Rather, they seek to vacate the judgment that was entered in connection with the July 1, 2009 Opinion and then, once the case is reinstated as an open matter on my docket, they plan to make their Rule 15(a) motion. Nevertheless, it is plain that the basic intent of the instant motion for reconsideration is to permit Plaintiffs to amend their Complaint to remedy the deficiencies that were identified in the July 1, 2009 Opinion, and in making their motion for reconsideration, the overwhelming majority of cases on which Plaintiffs rely are cases addressing the standard on granting leave to amend.

1

First, it is significant to note that the Complaint that was the subject of the July 1, 2009 Opinion was a Consolidated Amended Class Action Complaint that was filed pursuant to this Court's September 16, 2008 order consolidating three separately filed but related cases. On October 2, 2008, the Court entered a further order permitting Plaintiffs in the consolidated action to file an amended complaint within thirty days. On November 17, 2008, Plaintiffs filed the 56-page, 165-paragraph Complaint.[2]

Plaintiffs' second opportunity to amend the Complaint was afforded to them when Defendants filed their motion to dismiss on December 19, 2008. Pursuant to this Court's individual practices, upon service of a motion to dismiss, every plaintiff has the opportunity to amend the complaint as of right. Thus, each plaintiff has the opportunity, having had the benefit of learning from the motion to dismiss what the potential deficiencies of the complaint might be, and to attempt to cure those deficiencies in an amended complaint. However, the rules make explicit that this will be the plaintiff's one and only opportunity to amend, and that if the plaintiff's choice is to fight the motion to dismiss and not amend the complaint, if the motion is granted, it will be with prejudice. Here, Plaintiffs could have responded to the motion by filing an amended complaint, but chose not to do so. Instead, Plaintiffs chose to fight the motion to dismiss, and in footnote 23 on page 35 of their opposition to the motion, simply noted that "[a]lthough Plaintiffs believe that they have more than adequately stated claims against all Defendants, in the event the Court determines the [Complaint] is deficient in any respect, Plaintiffs respectfully request an opportunity to seek leave to replead in accordance with Fed. R. Civ. P. 15(a)." Acknowledging this request, and the general principal that leave to amend is often granted on a motion to dismiss a securities fraud claim, the Court at oral argument asked Plaintiffs' counsel how they might amend their allegations if given the opportunity to replead, to which counsel responded that "it depends on what your Honor was concerned about." *See* Transcript of May 19, 2009 Oral Argument ("Tr.") at 31:12-16.

Given Plaintiffs' decision to rely on their Complaint, this Court, after review of the papers and oral argument, concluded that the proper decision was to grant the motion. I concluded that Plaintiffs' allegations had failed to raise a strong inference of scienter and that Plaintiffs had failed to allege any material misrepresentations or omissions, both of which are required elements under the PSLRA. As noted, Plaintiffs do not seek reconsideration of any of the substantive elements of

---

[2] The initial complaints in each of the consolidated actions were significantly shorter – approximately 20 pages each – and were substantively different from the Consolidated Amended Class Action Complaint that was ultimately filed.

the July 1, 2009 Opinion. Rather, Plaintiffs seek reconsideration only to the extent the Complaint was dismissed with prejudice and to the extent the Court implicitly denied leave to replead.

## II. LEGAL STANDARD

The standards governing motions to alter or amend a judgment under Rule 59(e) and motions for reconsideration or reargument under Local Rule 6.3 are identical. *See Henderson v. Metropolitan Bank & Trust Co.*, 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007). The Second Circuit has instructed that the standard on a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . that might be expected to alter the conclusion reached by the court." *Schrader*, 70 F.3d at 257.[3]

Further, relief under Rule 60(b) is limited, and a court may only vacate or modify an order for reasons enumerated in the rule: mistake, inadvertence, surprise or excusable neglect; newly discovered evidence; fraud, misrepresentation or other misconduct; judgment is void; judgment is satisfied, released or discharged; or any other reason that justifies relief. *See* Fed. R. Civ. P. 60(b); *see also Harris v. United States*, 367 F.3d 74, 80 (2d Cir. 2004) (requiring that Rule 60(b) motions be "predicated on one of five narrow and specific grounds or on a sixth ground, which, despite its open wording, has been narrowly cabined by the precedent of this [Circuit]"); *see also Miller v. Norton*, 04-CV-3223 (CBA), 2008 U.S. Dist. LEXIS 34688, at *3-4 (E.D.N.Y. Apr. 28, 2008). Thus, it is well-settled that Rule 60(b)(6) relief is granted only in cases involving "extraordinary circumstances, or extreme hardship." *Harris*, 367 F.3d at 81 (internal quotation marks and citation omitted); *see also Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (finding "final judgments should not be lightly reopened"). The burden of proof on a Rule 60(b) motion is on the party seeking relief from the earlier judgment or order – in this case, Plaintiffs. *United States v. International Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) (citations omitted).

These standards on motions for reconsideration apply "in full force to a motion for reconsideration of a denial of leave to replead." *In re Refco Capital Markets, Ltd. Brokerage*

---

[3] "A motion for reconsideration is not an opportunity for the moving party 'to argue those issues already considered when a party does not like the way the original motion was resolved,'" *Lichtenberg v. Besicorp Group Inc.*, 28 Fed. Appx. 73 (2d Cir. 2002) (quoting *In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996)), nor is it an opportunity for the moving party to "advance new facts, issues or arguments not previously presented to the Court," *Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, 948 F.2d 111, 115 (2d Cir. 1991) (citation omitted). "The difficult burden imposed on the moving party has been established 'in order to dissuade repetitive arguments on issues that have already been considered fully by the Court.'" *Perez v. United States*, 378 F. Supp. 2d 150, 154 (E.D.N.Y. 2005) (quoting *Ruiz v. Commissioner of Dep't of Transp.*, 687 F. Supp. 888, 890 (S.D.N.Y.), *aff'd*, 858 F.2d 898 (2d Cir. 1988)).

*Customer Sec. Litig.*, Nos. 06 Civ. 643 (GEL), 07 Civ. 8686 (GEL), 07 Civ. 8688 (GEL), 2008
WL 4962985, at *2 (S.D.N.Y. Nov. 20, 2008); *see also National Petrochemical Co. of Iran v. M/T
Stolt Sheaf*, 930 F.2d 240, 244 (2d Cir. 1991) ("[O]nce judgment is entered the filing of an
amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R.
Civ. P. 59(e) or 60(b)."). The decision whether to grant a motion for reconsideration under Local
Rule 6.3 and Federal Rule 59(e) or a motion under Rule 60(b) lies in the sound discretion of the
district court. *E.g., Bennett v. Watson Wyatt & Co.*, 156 F. Supp. 2d 270, 272-73 (S.D.N.Y. 2001).

## III. DISCUSSION

    Plaintiffs' instant motion is premised on their argument that reconsideration of the Court's
dismissal with prejudice is warranted so that Plaintiffs can be given the opportunity to amend their
Complaint to address the deficiencies the Court identified in the July 1, 2009 Opinion and to plead
additional facts that Plaintiffs have discovered through their continuing investigation. More
specifically, Plaintiffs' argument on reconsideration is premised on their assertions that (1) the
Court overlooked Plaintiffs' previous request for leave to replead and (2) Plaintiffs have not yet
had an opportunity to amend their Complaint. On both grounds, Plaintiffs are wrong.

    The Court is, of course, well aware of the longstanding principle that in general, leave to
amend should be freely granted upon dismissal of a complaint. *See, e.g., Ronzani v. Sanofi S.A.*,
899 F.2d 195, 198 (2d Cir. 1990); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87,
108 (2d Cir. 2007) ("District courts typically grant plaintiffs at least one opportunity to plead fraud
with greater specificity when they dismiss under Rule 9(b)."); Fed. R. Civ. P. 15(a) ("[L]eave to
amend shall be freely given when justice so requires."). However, the Second Circuit has recently
acknowledged that "[i]t would be a mistake . . . to construe *Ronzani* as establishing a broad rule to
the effect that, in the case of a counseled plaintiff, abuse of discretion will be found and the case
remanded whenever a district court fails to provide for repleading." *Porat v. Lincoln Towers
Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006). Moreover, "while Rule 15 plainly embodies a
liberal amendment policy, in the post-judgment setting we must also take into consideration the
competing interest of protecting the finality of judgments and the expeditious termination of
litigation." *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (quoting *PR
Diamonds, Inc. v. Chandler*, 364 F.3d 671, 698-99 (6th Cir. 2004)); *see also National
Petrochemical*, 930 F.2d at 245. Indeed, the Second Circuit has found that "[w]hen the moving
party has had an opportunity to assert the amendment earlier, but has waited until after judgment

4

before requesting leave, a court may exercise its discretion more exactingly." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 192 (2d Cir. 2008) (quoting *State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, (2d Cir. 1990)).

In considering Plaintiffs' instant motion for reconsideration, two recent district court cases in this Circuit are particularly instructive. First, in *In re Crude Oil Commodity Litigation*, No. 06 Civ. 6677 (NRB), 2007 WL 2589482 (S.D.N.Y. Sept. 7, 2007), a case that is virtually indistinguishable on the facts, Judge Buchwald denied a motion for reconsideration of a motion to dismiss to the extent it denied leave to replead. *See id.* at *1-4. In that case, Plaintiffs had had three separate opportunities to amend their complaint: upon consolidation, upon receipt of defendants' letter of intent to file a motion to dismiss, and upon service of defendants' motion. *Id.* at *1-2. Moreover, plaintiffs in *In re Crude Oil*, like Plaintiffs here, had made their "purported request for leave to amend" wholly in a footnote in their opposition to the motion to dismiss. *Id.* at *2-3. In these circumstances, the court denied reconsideration where it found that plaintiffs had failed to request leave to amend in a procedurally sound manner, that it had not overlooked any controlling authority in denying such leave, and the result was "particularly apt here given the procedural history of this case, which provided plaintiffs with numerous opportunities to amend as well as full notice of the deficiencies in their Consolidated Amended Complaint." *Id.* at *3-4.

Similarly, *In re Star Gas Securities Litigation*, 241 F.R.D. 428 (D. Conn. 2007), the court denied a motion for reconsideration of dismissal without leave to amend, finding that the plaintiffs had demonstrated no valid basis on which to grant the motion. *Id.* at 431. Specifically, the court held that the plaintiffs had presented no new law or matters overlooked in its initial dismissal of the action, nor any new evidence that entitled them to relief from judgment. *Id.* Further, the court noted that plaintiffs had had the opportunity to amend their pleading after having been given notice of the defects of their complaint during a pre-motion conference with the Court. *Id.* at 432. Finally, the court acknowledged that although the plaintiffs had requested the opportunity to amend in their opposition to the motion to dismiss, they did not actually move to amend, propose any specific amendments or offer any indication of how any contemplated amendments might cure the alleged deficiencies. *Id.* Accordingly, "even taking into account the liberal policy of Rule 15(a), . . . the Court [denied] plaintiffs' motion." *Id.* at 433. The Second Circuit recently affirmed, finding that "even assuming *arguendo* the applicability of the liberal Rule 15(a) standard," there was no abuse of discretion in denying leave to amend where "[t]he district court gave plaintiffs-appellants the opportunity to amend the Complaint after a pre-motion telephone

5

conference where the defendants described their arguments in favor of dismissal [and] [p]laintiffs-appellants declined to do so . . . [and] [a]lthough plaintiffs-appellants informally requested leave to amend in their motion papers, they did not submit proposed amendments or otherwise indicate how they would correct any deficiencies in the Complaint." *Rosner v. Star Gas Partners, L.P.*, No. 07-1687-cv, 2009 U.S. App. LEXIS 18817, at *5-6 (2d Cir. Aug. 20, 2009).

Here, the Court acknowledges that it did not expressly address Plaintiffs' request for leave to replead, which was made only in a footnote in their brief in opposition to the motion to dismiss. It is this request that Plaintiffs contend the Court "overlooked" and which forms the basis of their motion for reconsideration. However, the law in this Circuit is abundantly clear that "[i]t is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss." *In re Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006).[4]

Moreover, Plaintiffs have presented no convincing basis for reconsideration of the implicit denial of leave to amend in this case, in particular where they had at least two opportunities to amend their complaint. First, as delineated above, Plaintiffs actually did make a substantive amendment to their allegations against the Defendants when they filed their current version of the Complaint. *See Bellikoff*, 481 F.3d at 118 (finding that filing of amended complaint upon consolidation constitutes amendment for purposes of Rule 15(a) analysis); *In re Crude Oil*, 2007 WL 2589482, at *1 (same). Second, pursuant to the individual practices of this Court, Plaintiffs were afforded a further opportunity to amend their pleading after having had the opportunity to digest Defendants' arguments in favor of dismissal.

To the extent Plaintiffs argue that they should have yet another bite at the apple after having had the additional benefit of the Court's explication of the shortcomings of the complaint, such a position must be rejected, as it is by now well-established that plaintiffs are "not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then

---

[4] Plaintiffs direct the Court to the Second Circuit's admonition that "the lack of a formal motion [for leave to amend] is not sufficient ground for a district court's dismissal without leave to amend, so long as the plaintiff has made its willingness to amend clear." *McLaughlin v. Anderson*, 962 F.2d 187, 195 (2d Cir. 1992). However, Plaintiffs fail to acknowledge that the Second Circuit in *McLaughlin* went on to find that in a situation where the request for leave to amend is made informally, "the matter is reserved to the discretion of the district court." *Id.* Indeed, in *McLaughlin*, the plaintiffs had already had one opportunity to amend their pleadings and thus the Second Circuit found no abuse of discretion. *Id.* Likewise, here, the Court's implicit denial of leave to amend was not premised solely on the fact that the request was made in a footnote, but rather because Plaintiffs had had ample opportunity to amend. *See In re Merrill Lynch Ltd. P'ships Litig.*, 7 F. Supp. 2d 256, 276 (S.D.N.Y. 1998), *aff'd*, 154 F.3d 56 (2d Cir. 1998). Nonetheless, it is worth noting that it is by now well-established that a court need not address an argument made wholly in a footnote to a brief. *See In re Worldcom, Inc. Sec. Litig.*, 308 F. Supp. 2d 214, 231 n.24 (S.D.N.Y. 2004).

6

an opportunity to cure those deficiencies." *Bellikoff*, 481 F.3d at 118; *Ritchie Capital Mgmt., L.L.C. v. Coventry First LLC*, 07 Civ. 3494 (DLC), 2008 U.S. Dist. LEXIS 15689, at *8 (S.D.N.Y. Feb. 29, 2008); *see also In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, (S.D.N.Y. 2003) (noting Second Circuit's finding that it was "certainly within the district court's discretion to deny plaintiff leave to file a second amended complaint, where one basis for denial of leave to amend was the bad faith of appellant in waiting to see how he would fare on the prior motion to dismiss") (quoting *Vine v. Beneficial Fin. Co.*, 374 F.2d 627, 636-37 (2d Cir. 1967)).[5] Here, when I inquired at oral argument, Plaintiffs gave no indication of how they intended to amend the Complaint, except that they would want to see what the Court would identify as its concerns and be guided accordingly. *See* Tr. at 31:12-16. This will not do.

Furthermore, it is worth noting that Plaintiffs have given no indication of the facts that they believe may amplify the allegations of their complaint or otherwise address the deficiencies the Court identified in its July 1, 2009 Opinion. All the Court has been told is that "Plaintiffs believe that they now have additional support for their allegations." Thus, even if the Court were to vacate the judgment in this case to allow Plaintiffs to make their motion for leave to amend, it seems likely from the record that such a motion would be doomed to failure. Plaintiffs having shown no other reason why reconsideration or vacatur of the judgment is appropriate, their motion must be denied.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiffs' motion for reconsideration is DENIED.

**IT IS SO ORDERED.**
**New York, New York**
**December 4, 2009**

U.S.D.J.

---

[5] As then-district Judge Lynch aptly noted:

> [w]hile pleading is not a game of skill in which one misstep may be decisive to the outcome, neither is it an interactive game in which the plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges. It is the plaintiffs' responsibility to plead their case adequately, and a court may deny a plaintiff leave to replead when that party has – as here – been given ample prior opportunity to allege a claim.

*In re Refco*, 2008 WL 4962985 at *2 (citations and internal quotation marks omitted).

In re GILDAN ACTIVEWEAR INC. SECURITIES LITIGATION

Addendum "B" to Civil Appeal Pre-Argument Statement (Form C)

Issues Currently Proposed to be Raised on Appeal and Applicable Standards of

Review[1]

1.      Whether the district court erred in holding that Plaintiff-Appellants'

allegations of motive and opportunity were inadequate, where Plaintiff-Appellants

alleged, among other things, that the Individual Defendant-Appellees sold 25% and 53%

of their Gildan holdings during the relevant period, where collectively those parties

recognized proceeds of $96 million on their sales during the relatively short Class Period,

and where one of those parties entered into a 10b5-1 trading plan only weeks before the

Class Period commenced. (Standard: *de novo* review. *See Ganino v. Citizens Utils. Co.*,

228 F.3d 154, 161 (2d Cir. 2000)(stating, "[w]e review *de novo* a district court's

dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the

complaint as true and drawing all reasonable inferences in the plaintiffs' favor").

2.      Whether the district court erred by including the restricted stock holdings

of one defendant in calculating the percentage of his holdings that were sold during the

class period, where the restricted stock at issue could not have been sold until that party

had remained at the company for a specified number of years. (Standard: *de novo*

review. *Id.*)

3.      Whether the district court erred in holding that the Complaint failed to

adequately allege recklessness, where the district court overlooked particularized

allegations detailing the myriad production problems faced by the Company's Dominican

---

[1] Plaintiff-Appellants reserve the right to add to, delete from, or otherwise modify this list as they prepare
their appellate brief.

1

Republic facility at critical points during the Class Period, as well as detailed allegations of Defendant-Appellees' knowledge of those production problems. (Standard: *de novo* review. *Id.*)

      4.     Whether the district court erred in holding that the Complaint failed to adequately allege recklessness, where the district court failed to draw appropriate inferences from the specific facts alleged and instead required Plaintiff-Appellants to plead the contents of internal modeling reports and/or internal financial forecasts prior to formal discovery. (Standard: *de novo* review. *Id.*)

      5.     Whether the district court erred in finding, in *dicta*, that the Complaint failed to allege a material misrepresentation, where the district court only analyzed some of the alleged misrepresentations and completely ignored others. (Standard: *de novo* review. *Id.*)

      6.     Whether the district court erred by not allowing Plaintiff-Appellants to file an Amended Complaint, where Plaintiff-Appellants timely requested the right to amend, where Plaintiff-Appellants have not filed a previous amended complaint, and where Plaintiff-Appellants have additional information to add to their claims. (Standard: *de novo* review. *Id.*)